UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 25-cr-344 (JWB/DLM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | MOTION TO DISMISS |
| Plaintiff, | ) | COUNT THREE OF |
| | ) | THE INDICTMENT |
| v. | ) | |
| | ) | |
| CORY DONTA EDWARDS, | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, Cory Edwards, through counsel, respectfully moves the Court to dismiss count three the indictment, which charges Mr. Edwards with felon in possession of ammunition under 18 U.S.C. § 922(g)(1). Indictment, ECF No. 1. As a matter of law, this charge violates the Second Amendment of the U.S. Constitution in light of the Supreme Court's recent watershed case of *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which upended decades of circuit-court precedent interpreting the Second Amendment.

Mr. Edwards acknowledges this argument is foreclosed by *United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024), where the Eighth Circuit upheld the constitutionality of 18 U.S.C. § 922(g)(1) following *Bruen* and *United States v. Rahimi*, 144 S. Ct. 1889 (2024). Mr. Edwards is aware that out-of-circuit district courts have disagreed with the Eighth Circuit's holding. *See, e.g.*, *United States v. Glass*, No. 24-cr-30124, 2025 WL 2771011, (S.D. Ill. Sept. 29, 2025) (holding that the felon-in-possession statute is facially unconstitutional after *Bruen*); *United States v. Prince*, 700 F. Supp. 3d 663, 676 (N.D. Ill.)

(same).   Mr. Edwards files this Motion to preserve the issue for further review.

I.        **The Second Amendment and Its Legal Standards After *Bruen***

The Second Amendment mandates: a "well-regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. CONST. amend. II.   The Supreme Court held in *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008), that the Second Amendment codified an individual right to possess and carry weapons, explaining that the inherent right of self-defense, particularly in the home, is paramount, *see also McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (holding "that individual self-defense is the central component of the Second Amendment right.").

The Supreme Court recently clarified a two-part standard for courts to apply when deciding whether a government regulation violates the Second Amendment.   *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).   First, a court must begin by deciding whether the "Second Amendment's plain text covers [the] individual's conduct" that the government seeks to regulate.   *Id.* at 2126.   The Second Amendment right to "bear arms" refers to the right to "wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in a case of conflict with another person."   *Id.* at 2134 (cleaned up).   If the conduct at issue is covered by the Second Amendment's plain text, that conduct is presumptively protected by the Second Amendment.   *Id.*

Second, to justify any regulation of protected conduct, "the government may not

simply posit that the regulation promotes an important interest." *Id.* Instead, the government has the burden to prove its regulation "is consistent with this Nation's historical tradition of firearm regulation." *Id.* Put another way, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. This historical analysis focuses on tradition at the time of the founding and the ratification of the Second Amendment. *Id.* at 2136–37. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126.

Below, Mr. Edwards explains how *Bruen*'s two-part test requires dismissal.

**II.      Section 922(g)(1) violates the Second Amendment.**

The government charges Mr. Edwards with felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1). Because the possession of ammunition comes within the Second Amendment's plain text, the charged conduct is presumptively protected by the Second Amendment. *See Bruen*, 142 S. Ct. at 2134. Additionally, felon-disarmament laws did not appear in the United States until the Twentieth Century and were unknown to the generation that ratified the Second Amendment. The government thus cannot prove § 922(g)(1) is consistent with the Nation's historical tradition of firearms regulations. *See id.* at 2130.

**A.      The Second Amendment's plain text covers § 922(g)(1) conduct.**

As explained above, *Bruen* directs courts to begin the Second Amendment analysis

by asking whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2126. The answer to that question is not difficult in Mr. Edwards's case. The Second Amendment protects the right of "the people" to "keep and bear arms." Possession of ammunition, the conduct proscribed by § 922(g)(1), easily qualifies as "keep[ing]" and "bear[ing]" arms. *See, e.g.*, James Lockhart, *Construction and Application of United States Supreme Court Holdings in* District of Columbia v. Heller, *554 U.S. 570 (2008) and* McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020 (2010) Respecting Second Amendment Right to Keep and Bear Arms, to State or Local Laws Regulating Firearms or Other Weapons*, 64 A.L.R.6th 131 (2011) (providing an extensive survey of caselaw that discusses what "to keep and bear arms" entails, including why "bear arms" extends to the possession of ammunition); *see also Luis v. United States*, 578 U.S. 5, 26–27 (2016) (explaining that "[t]he right to keep and bear arms, for example, 'implies a corresponding right to obtain the bullets necessary to use them'" (cleaned up)); *Jackson v. Cty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("[W]ithout bullets, the right to bear arms would be meaningless.").

Likewise, Mr. Edwards is part of "the people" within the meaning of the Second Amendment. Just as that Amendment does not "draw[] a home/public distinction with respect to the right to keep and bear arms," *see Bruen*, 142 S. Ct. at 2134, it does not draw a felon/non-felon distinction. "Nothing in the Second Amendment's text" suggests that those who have been convicted of a felony are unentitled to the Amendment's protection. *See id.*

4

**B.      The government cannot meet its burden to show that § 922(g)(1)'s restrictions are consistent with the Nation's historical tradition of firearm regulation.**

Because the Second Amendment's plain text covers Mr. Edwards's alleged conduct, "the Constitution presumptively protects that conduct." *See Bruen*, 142 S. Ct. at 2126. To rebut the presumption, the government must establish that § 922(g)(1) "is consistent with this Nation's historical tradition of firearm regulation." *Id.* Section 922(g)(1) is unconstitutional unless the government shows a robust tradition of "distinctly similar historical regulation[s]" as of 1791, when the Second Amendment was ratified. *Id.* at 2131. The government is unable to make this showing.

What is today § 922(g)(1) traces its origins to 1938, when Congress passed a statute, the Federal Firearms Act, prohibiting certain felons from receiving certain types of ammunition. 52 Stat. 1250, 1251 at 8 (1938) (defining ammunition as "all pistol or revolver ammunition except .22-caliber rim-fire ammunition"). At that time, the statute covered defined the class of people prohibited from possessing ammunition as those with convictions for "murder, manslaughter, rape, mayhem, kidnaping, burglary, housebreaking; assault with intent to kill, commit rape, or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year." *Id.* at 6. It was not until 1961 that Congress amended the statute to prohibit "possession by *all* felons." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (citing Pub. L. 87–342, 75 Stat. 757). Thus § 922(g)(1) "is firmly rooted in the twentieth century,"—a century and a half after adoption of the Second Amendment.

*United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011).   Regulations of such recent vintage cannot establish a historical tradition unless they "confirm[]" earlier practice. *Bruen*, 142 S. Ct. at 2137.   Indeed, the *Bruen* Court emphasized it would not even "address any of the 20th-century historical evidence brought to bear by respondents or their amici," because such evidence "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence."   *Id.* at 2154 n.28.

Even if the Court broadens its focus to consider state statutes as well, § 922(g)(1) "bears little resemblance to laws in effect at the time the Second Amendment was ratified." *N.R.A. v. A.T.F.*, 700 F.3d 185, 196 (5th Cir. 2012).   In 2007, Robert H. Churchill, a history professor at the University of Hartford, undertook "a full survey of printed session laws pertaining to gun regulation in the thirteen colonies and Vermont between 1607 and 1815."   Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 Law & Hist. Rev. 139, 143 & n.11 (2007).   Based on that survey, Professor Churchill concluded that "at no time between 1607 and 1815 did the colonial or state governments of what would become the first fourteen states exercise a police power to restrict the ownership of guns by members of the body politic."   *Id.* at 142.   Carlton Larson, a professor at the University of California-Davis School of Law, has written that, "[a]s far as [he] can determine, state laws prohibiting felons from possessing firearms or denying firearms licenses to felons date from the early part of the twentieth century."   Carlton F.W. Larson, *Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 Hastings

6

L.J. 1371, 1376 (2009); *accord N.R.A.*, 700 F.3d at 197 ("[A] strictly originalist argument for . . . bans on firearm possession by felons . . . is difficult to make.").

In short, there was no "historical tradition," circa 1791, of regulations "distinctly similar" to § 922(g)(1). *See Bruen*, 142 S. Ct. at 2130–31. The "Founders themselves could have adopted" laws like § 922(g)(1) to "confront" any "perceived societal problem" posed by felons possessing ammunition. *See id.* at 2131. But they did not do so, and that inaction indicates § 922(g)(1) "[i]s unconstitutional." *See id.*

Because § 922(g)(1) violates the Second Amendment, the indictment should be dismissed. *But see Jackson*, 110 F.4th at 1129 (rejecting a Second Amendment challenge to § 922(g)(1) after *Bruen*, concluding that "Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons"); *United States v. Payton*, No. 23-CR-192 (KMM/DLM), 2024 WL 261284, at \*3 (D. Minn. Jan. 24, 2024) (applying *Jackson* to reject a Second Amendment challenge to § 922(g)(1)); *contra Range v. Atty General United States*, 124 F.4th 218, 232 (3rd Cir. 2023) (applying *Bruen* to decide that § 922(g)(1) violates the Second Amendment as applied to Mr. Range).

### III.   Meet and Confer

On March 30, 2025, defense counsel and counsel for the government met and conferred in good faith via telephone about the contents of this Motion. The parties were not able to narrow any disputed issues in dispute. The parties agree this Motion does not require an evidentiary hearing.

## IV.    Conclusion

For the reasons above, Mr. Edwards respectfully moves this Court to dismiss count three of the indictment.

Dated: March 30, 2025                              Respectfully submitted,

                                                  *s/Matthew Deates*

                                                  MATTHEW DEATES
                                                  Attorney ID No. 0400318
                                                  Attorney for Mr. Edwards
                                                  Office of the Federal Defender
                                                  107 U.S. Courthouse
                                                  300 South Fourth Street
                                                  Minneapolis, MN 55415